1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Jesse Martinez,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-12-0753-PHX-NVW (JFM)

**Report & Recommendation On Petition**
**For Writ Of Habeas Corpus**

11

## I. MATTER UNDER CONSIDERATION

12

13

14

15

Petitioner, presently incarcerated in the Arizona State Prison Complex at Douglas, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 9, 2012 (Doc. 1). On August 15, 2012 Respondents filed their Answer (Doc. 9). Petitioner has not replied, and the time to do so has expired.

16

17

18

19

20

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

21

22

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

23

## A. PROCEEDINGS AT TRIAL

24

25

26

27

On July 16, 2007, Petitioner was charged in Maricopa County Superior Court with one count of acquisition of a narcotic drug (Vicodin), arising out of conduct on February 15, 2006. (Exhibit A, Indictment.) (Exhibits to the Answer, Doc. 9 are referenced herein as "Exhibit ___.")

28

Counsel Gouri Nair was appointed, and on October 24, 2007 Petitioner filed a *pro se* Motion for Change of Counsel (Exhibit B), seeking appointment of new counsel. Petitioner appeared on November 14, 2007, with counsel Llewellyn who appeared on behalf of counsel Nair. Counsel raised the issue of the motion, and the trial court ruled that it had not been "properly filed or submitted to the Court to address." (Exhibit C, R.T. 11/4/07 at 4.) Counsel Llewellyn responded "I'll talk to him and make sure that it gets properly filed." (*Id.*) Petitioner did not file another motion or raise further objections to counsel. (Exhibit H, Mem. Dec. 10/1/9 at 2.) No further action was taken on the issue.

Petitioner proceeded to trial on December 10, 2007. During the course of *voir dire*, the State used peremptory strikes on the last two remaining Hispanic jurors, numbers 30 and 31. The only other prospective Hispanic juror had been struck for cause. (Exhibit H, Mem. Dc. 10/1/9 at 3, and n. 2.) Defense counsel objected, pointing out that the prosecution had kept jurors with family members with convictions and jurors with technical backgrounds, but struck the two Hispanic jurors whose voir dire revealed nothing objectionable. (Exhibit D, R.T. 12/10/07 at 106-107.) The prosecutor described his reasoning:

> MR. MATSUNO: As to number 30, unmarried and pregnant, didn't like it. As to number 31, partly because he was an engineer, partly because didn't learn much at all. I learned from him he's married and he has one young child. I was uncomfortable going with that little information. Frankly, I got a weird vibe and I didn't like the way he answered the questions. His voice was very short, seemed impatient, seemed staccato, seemed to trike me -- all prosecutors fear engineers, someone who is very nit picky and very detailed oriented.
> THE COURT: Although there are other people technical backgrounds that are on this jury.
> MR. MATSUNO: Well, there are. I haven't had the -- engineers have a reputation and I don't think it's anything in the legal field, that it's a mistery [sic] in the legal field. And while other people may have other technical backgrounds, I do believe people who are engineers are of a special breed.

(*Id.* at 107-108.) The trial court overruled the challenge.

1 Petitioner proceeded to trial and was convicted on the charge. On January 28,

2 2008, Petitioner was sentenced to 11.25 years on the sole count. (Exhibit E, Sentence.)

3

4 **B. PROCEEDINGS ON DIRECT APPEAL**

5 Petitioner filed a Notice of Appeal (Exhibit F), and an Opening Brief (Exhibit G)

6 raising his *Batson* challenge to the striking of the two Hispanic jurors, and a claim of

7 denial of counsel based on the trial court's failure to inquire into the basis for his request

8 for new counsel.

9 In a Memorandum Decision issued October 1, 2009 (Exhibit H), the Arizona

10 Court of Appeals rejected both of Petitioner's claims, and affirmed his conviction and

11 sentence. Petitioner did not appeal further, and on January 5, 2010, the Arizona Court of

12 Appeals issued its Mandate (Exhibit I).

13

14 **C. PROCEEDINGS ON POST-CONVICTION RELIEF**

15 In the meantime, on November 17, 2009, Petitioner filed a Notice of Post-

16 Conviction Relief (Exhibit J). Counsel was appointed, and on September 13, 2010,

17 counsel filed a Notice of Completion (Exhibit K) evidencing an inability to find a viable

18 issue for review.

19 Petitioner then filed on November 3, 2010, a revised Notice of Post Conviction

20 Relief (Exhibit L) and Petition for Post Conviction Relief (Exhibit M), raising five

21 claims for relief:

22 (1) his trial attorney provided ineffective assistance of counsel; (2)
newly-discovered evidence in that he was charged with a
23 nondangerous crime but sentenced as a dangerous offender; (3) his
prior convictions were illegally used to enhance his sentence; (4) his
24 sentence was unlawful; and (5) his attorney should not have
represented him due to an irreconcilable conflict of interest.
25
(Exhibit N, M.E. 7/26/11.) The PCR court found the claims wither precluded or without
26
merit, and summarily dismissed the petition. (*Id.*)
27
Petitioner did not seek further review. (Petition, Doc. 1 at 5.)
28

## D.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 9, 2012 (Doc.1).  Petitioner's Petition asserts the following two grounds for relief:

> (1)   The trial court violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights when it permitted the prosecutor to strike the remaining Hispanic jurors without a proper reason; and
> (2)   Petitioner's Sixth Amendment right to effective assistance of counsel was violated when the trial court refused to conduct a hearing on Petitioner's request for change of counsel.

(Order 5/17/12, Doc. 3 at 1-2.)

**Response** - On August 15, 2012, Respondents filed their Response ("Answer") (Doc. 9).  Respondents concede the timeliness of the motion and the exhaustion of state remedies.   Respondents argue that the Arizona Court of Appeals' rejection of Petitioner's claims was not contrary to nor an unreasonably application of federal law.

**Reply** – Petitioner was given 30 days from the filing of an answer to reply in support of his Petition.  (Order 5/17/12, Doc. 3 at 3.)  Petitioner has not done so, and the time has expired.

### III. APPLICATION OF LAW TO FACTS

## A.  GROUND 1: *BATSON*

In Ground 1 of his Petition, Petitioner argues that his rights were violated when the prosecutor struck jurors 30 and 31.  Respondents argue that the Arizona Court of Appeals' rejection of this claim was not contrary to nor an unreasonable application of federal law.

**Habeas Standard** – While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision must

4

be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted. 28 U.S.C. §2254(d)(1).

**_Batson_ Principles** - In *Strauder v. West Virginia*, 100 U.S. 303 (1880), the Supreme Court held that a defendant is denied equal protection under the Fourteenth Amendment when tried by a jury from which members of his race have been purposefully excluded. In *Batson v. Kentucky*, 476 U.S. 79 (1985), the Supreme Court addressed the showing required of a defendant when challenging not a systematic exclusion of a race (such as the exclusion of all "negroes" at issue in *Strauder*), but an exercise of strikes of individual jurors through peremptory challenges. The *Batson* Court outlined a three step process involving: (1) a defendant showing a *prima facie* case of discrimination; (2) the state proffering a racially neutral explanation for the strikes; and (3) the trial court evaluating the circumstances to determine whether the defendant has established purposeful discrimination through the strikes.

**State Court Decision** – Here, the Arizona Court of Appeals reiterated the *Batson* process (Exhibit H, Mem. Dec. at 4-5), found that Petitioner had "made a *prima facie* showing of discrimination based on race (*id.* at 5), found "the State's explanation to be facially neutral" (*id.*at 5-6), and concluded that the trial court "correctly found that the State's responses were not pretexts for purposeful discrimination" (*id.* at 6).

Other than reiterating the facts, and attacking the conclusions, the only error in the state courts' decisions asserted by Petitioner is his argument that "the prosecutor did not offer justification (proper) for striking either juror." (Petition, Doc. 1 at 6.)

**_Prima Facie_ Case** – Here, the State conceded and the Arizona Court of Appeals found that Petitioner "made a *prima facie* showing of discrimination based on race." (Exhibit H, Mem. Dec. at 5). Given the lack of obvious reasons for excluding jurors 30 and 31, and their status as the sole remaining veniremen of Petitioner's race, the state court's conclusion was correct. *Cf. Hernandez v. New York*, 500 U.S. 352, 359 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges

and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot.").

**Racially Neutral Explanations** - The Arizona Court of Appeals concluded that the prosecutor's explanations for striking the jurors were racially neutral. (Exhibit H, Mem. Dec. at 5.) "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). Here, the reasons proffered by the prosecution for striking jurors 30 and 31 had no connection with their race, and therefore were racially neutral within the meaning of *Batson*.

The appellate court described those explanations as follows:

> The State explained that juror number 30 was struck because she was pregnant and unmarried…Regarding juror number 31, the State explained: (1) he was an engineer; (2) the State did not learn much about him from his answers; (3) his voice was short, impatient and seemed staccato; and (4) all prosecutors fear engineers for being very nit picky and detail oriented.

(*Id.* at 5-6.) None of those explanations dealt with or were in any way related to the jurors' race.

Perhaps Petitioner is simply jumping ahead and criticizing the appellate court's acceptance of those explanations given the impact of the decisions, *i.e.* the exclusion of the remaining Hispanic jurors. However, at the explanatory phase of the analysis, the impact of the decisions is irrelevant. The court is not tasked to look through the explanations to the real reasons for the prosecutor's actions, but to simply look at the nature of the proffered explanations.

> A court addressing [the race neutrality] issue must keep in mind the fundamental principle that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact…. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."

*Hernandez*, 500 U.S. at 359-60. The aim of this phase of the analysis seems modest in light of our current sensitivities. It is simply to enforce the principle that an explanation

6

based on race, no matter how reasonable it may seem, is never acceptable - - a concept that was novel to many not so long ago in our history.  "But the prosecutor may not rebut the defendant's *prima facie* case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption-or his intuitive judgment-that they would be partial to the defendant because of their shared race." *Batson*, 476 U.S. at 97.

**Determination of Purposeful Discrimination** – The final and most challenging stage of the process requires that the court "determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359.  "[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *Hernandez v. New York*, 500 U.S. at 364.  In the context of a habeas proceeding, the deference is even higher under the limitations on habeas relief.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

State Court findings of fact are entitled on habeas review to a presumption of correctness.  28 U.S.C. § 2254(e)(1)  Moreover, federal courts are authorized to grant habeas relief on the basis of mistaken factual determinations only where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Here, Petitioner proffers no explanation why the state court's factual determination was unreasonable.

The Arizona Court of Appeals properly considered "the credibility of the State's justifications, considering 'the prosecutor's demeanor; by how reasonable or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy."  (Exhibit H, Mem. Dec. at 6 (citations omitted).)  Indeed, the

Supreme Court has held that "the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

The court evaluated not only the reasons proffered, but noted approvingly that the trial court had inquired into the justification for relying on juror 31's engineering profession when other persons with technical backgrounds were excluded, and had obtained the explanation that "engineers are of a special breed." (Exhibit H, Mem. Dec. at 6.)   Indeed, engineering could readily be seen as branch of science that requires a particular attention to detail, and a particular commitment to mathematical certainties that other technical endeavors do not face.

In fact, Petitioner complains that "Defense counsel demonstrate that other jurors had similar characteristics as members #30 and #31." (Petition, Doc. 1 at 6.)  However, there is nothing in the record to suggest that the specific factors cited by the prosecutor were present in the other members, namely juror 31's status as an engineer, and juror 30's pregnant and unmarried status.

It may seem that the striking of juror #30 based on her unwed pregnancy reflects a certain level of judgmentalism that may seem out of step with the realities of modern society.[1]  But it reflects what remains an engrained judgment about the detrimental effect of such pregnancies[2] which would suggest an implication that an unmarried pregnant woman might hold views that would make her less inclined to promote traditional societal views on behavior. In the context of a prosecution for drug possession, such views could be expected to be disagreeable to a prosecutor.

---

[1] The Centers for Disease Control and Prevention reports that in 2010  some 40.8% of all births in the United States were had by unmarried women. *See* http://www.cdc.gov/nchs/fastats/unmarry.htm, last accessed 12/6/12.

[2] The Pew Research Center reported in 2010 that despite the pervasiveness of unwed mothers, 69% of respondents said "the trend toward more single women having children is bad for society."  *See http://pewresearch.org/pubs/1802/decline-marriage-rise-new-families,* last accessed 12/6/12.

1    Similarly, as noted above, the exactitude which might be presumed from an

2    engineer could be expected to be disagreeable to a prosecutor with the burden of proof.

3    Other than the happenstance of jurors 30 and 31's race, there is nothing in the

4    record to suggest that the prosecution struck these jurors for racially discriminatory

5    reasons, rather than for the reasons proffered.   As noted by the Arizona Court of

6    Appeals, the trial court had (in reaching its conclusion) the advantage not only of the

7    cold record, but of evaluating the demeanor of the prosecutor at the time.

8    The undersigned finds nothing to suggest that the state court's conclusion was an

9    unreasonable determination of the facts.   Accordingly, Ground 1 is without merit, and

10   should be denied.

11

12   **B. GROUND 2: CHANGE OF COUNSEL**

13   For his Ground 2, Petitioner argues that his Sixth Amendment rights were

14   violated when the trial court failed to investigate Petitioner's motion to appoint new

15   counsel, and incorrectly denied his motion as not properly filed. (Petition, Doc. 1 at 7.)

16   Respondents argue that the Supreme Court has not recognized any obligation on a

17   criminal trial court to investigate a request for the appointment of new counsel.

18   (Answer, Doc. 9 at 17.)

19   **State Court Ruling** – The Arizona Court of Appeals rejected this claim, holding:

20   (1) the Sixth Amendment right to counsel does not guarantee counsel of a defendant's

21   choice or a meaningful relationship with counsel (Exhibit H, Mem. Dec. at 7);  (2) under

22   Arizona law, when a defendant raises a colorable claim of an irreconcilable conflict with

23   counsel, the court has a duty to inquire (*id.* at 8); (3) Petitioner made no factual

24   allegations in his motion, and thus failed to make a colorable claim (*id.*); and (4) any

25   error in the trial court denying the motion as improperly filed was waived by Petitioner

26   failing to file a second motion (*id.* at 8-9).

27   **Duty to Inquire on Motion for New Counsel** – Petitioner's motion for new

28   counsel proffered no basis for substituting counsel. To the extent that Petitioner might

9

1  challenge the motion's denial as a matter of procedure, that claim would sound in state
2  law, and would not provide fodder for federal habeas relief.  *Estelle v. McGuire*, 502
3  U.S. 62 (1991).

4       Otherwise, the denial of the motion on the merits would have been proper, no
5  cause having been shown, absent some duty of the trial court to inquire on the basis of
6  the unsubstantiated motion.

7       Petitioner points to no authority for his proposition that every request for new
8  counsel must be investigated by the trial court. More particularly, Petitioner points to no
9  Supreme Court authority establishing such a requirement.   Indeed, in making his
10 argument to the Arizona Court of Appeals, Petitioner relied on state authorities, and
11 several federal circuit court opinions, but no Supreme Court authority.  (Exhibit G,
12 Open. Brief at 22-26.)

13      It is true that in *Martel v. Clair*, 132 S.Ct. 1276 (2012), the Court recently
14 observed: "As all Circuits agree, courts cannot properly resolve substitution motions
15 without probing why a defendant wants a new lawyer."  132 S.Ct. at 1288.[3]  However,
16 *Martel* dealt specifically with appointment of counsel under 18 U.S.C. § 3599 in a
17 federal habeas proceeding challenging a state death sentence.  The case was not decided
18 on constitutional grounds, and 18 U.S.C. § 3599 has no application to Petitioner's
19 counsel in his state court criminal trial.  Moreover, *Martel* was not decided until some 3
20 years after the Arizona Court of Appeals issued its decision in Petitioner's direct appeal.
21 Thus, whatever credence *Martel* might lend to Petitioner's claim, it was not "clearly
22 established Federal law, as determined by the Supreme Court of the United States," 28
23 U.S.C. § 2254(d)(1), at the time the trial court and the Arizona Court of Appeals ruled.
24 This habeas court is constrained to apply "precedent existing at the time the defendant's
25 conviction became final." *Williams v. Taylor*, 529 U.S. 362, 381 (2000) (quoting *Teague*
26 *v. Lane*, 489 U.S. 288, 301 (1989)).

27
28 [3] The *Martel* Court also indirectly quoted 2 W. LaFave & J. Israel, *Judicial Discretion in Selecting Appointed Counsel,* Criminal Procedure § 11.4, p. 36 (1984), which reveals no Supreme Court authority mandating an inquiry.  132 S.Ct. at 1288.

10

It is also true that in *Holloway v. Arkansas*, 435 U.S. 475 (1978), the Supreme Court held that a presumption of prejudice arises when a court fails to investigate when counsel asserts he has a conflict of interest.  In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Court expanded *Holloway* to circumstances where the court knows or has reason to know that counsel is proceeding under a conflict of interest.  However, in *Mickens v. Taylor*, 535 U.S. 162 (2002), the Court held that a failure to inquire did not mandate automatic reversal, but the defendant remained obligated to show that the conflict adversely affected counsel's performance.

The *Holloway* line of cases is inapposite because Petitioner has never asserted, and certainly did not assert to the trial court, that counsel was laboring under a conflict of interest, but simply that their relationship was flawed.

Moreover, to the extent that these conflict of interest cases could be shoehorned to apply, *Mickens* instructs that the duty to inquire arises only when there is some knowledge by the court that gives a reason to know that substitution is required.  Apart from the knowledge that Petitioner wanted new counsel, Petitioner's bare request for new counsel offered the trial court no reason to inquire further.  A defendant may seek new counsel for any number of reasons that don't involve a conflict of interest, and/or that don't require substitution.[4]

In sum, Petitioner has failed to show that the trial court's rejection of the motion was contrary to or an unreasonable application of federal law as determined by the Supreme Court.  Accordingly, this Court cannot grant relief on Petitioner's Ground 2, and the ground must also be denied.

/ /

---

[4] Petitioner does not in his Petition proffer any indication that had the court inquired it would have discovered reason to substitute counsel.  In his PCR Petition, Petitioner did assert that his relationship with counsel was broken, resulting in an irreconcilable conflict.  However, Petitioner offers only bald assertions of a break down, bolstered only by after-the-fact complaints about the course of trial. (Exhibit M, PCR Pet., Attach. A at 2-3.)  Those alleged subsequent failings by counsel do not establish that there was a breakdown in communications at the time of Petitioner's motion, such that further inquiry would have shown cause for substitution.

## IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the underlying constitutional claims are plainly without merit, and reasonable jurists would not find the district court's assessment of the constitutional claims debatable or wrong. Accordingly, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed April 9, 2012 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability **BE DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: December 11, 2012

12-0753r RR 12 12 04 on HC.docx

James F. Metcalf
United States Magistrate Judge

13